# Exhibit 11

## Release from Commitment in Massachusetts (Exhibit 11)

Under the Jimmy Ryce Civil Commitment Program, the only way for a person adjudicated "sexually dangerous" (SD) to be discharged occurs

> When the Director of the facility in which a person is placed pursuant to subsection (d) determines that the person's condition is such that he is no longer sexually dangerous to others, or will not be sexually dangerous to others if released under a prescribed regimen of medical, psychiatric, or psychological care or treatment, he shall promptly file a certificate to that effect with the clerk of the court that ordered the commitment.

Since the Program aims to place SD men in state facilities when these are available, presumably SD men in Massachusetts (and possibly in other New England states) will be committed to the Massachusetts Treatment Center for Sexually Dangerous Persons. But whether they are placed there or some other facility, we can analyze, hypothetically, the burdens of such placement. In this scenario, the "Director of the facility in which a person is placed" would then be the Director of the Massachusetts Treatment Center for Sexually Dangerous Persons. So, the Program would rely on said Director to initiate release proceedings for men who are no longer sexually dangerous. We have data in Massachusetts (and the pattern is almost identical in other states) that suggests how this would actually operate.

### How Directors of sex offender treatment facilities have operated

In Massachusetts, more than fifty (less than 100, exact number unknown) men who were deemed SD have been found to be no longer SD during the time when the "treatment" facility has been run by the Department of Corrections (DOC). In over 98% of those cases, the State has opposed their release, and in no case has the DOC petitioned for their release.

That means that there have been *at least* fifty occasions when men who were no longer sexually dangerous remained committed to the facility. Though the Massachusetts SDP law, Section 9, states that "The department of correction may file a petition at any time if it believes a person is no longer a sexually dangerous person," this has never happened and it is almost certain that it never will happen. Indeed, the DOC has a track record of almost always opposing the release of men who were, in fact (as determined by the courts in the subsequent hearing), no longer SD.

Furthermore, we have accurate figures about the average length of treatment in the Massachusetts SOTP *according to the clinical experts who oversee that treatment program*. In Massachusetts, the Community Access Board (CAB) reviews the treatment and SD status of each committed man annually and determines if they remain SD. Year after year, they find that the men remain SD well over 99% of the time. That's an astounding figure for any treatment program of any treatable disorder of any type. It represents a "cure" or a "sufficient reduction in

1

risk due to treatment" rate of well under 1% per year. At that rate, we can estimate the *average* length of "treatment" to be well over 50 years.[1]

In Massachusetts, SD men are entitled to petition the court annually for a hearing to review their SD status and for release if they are found to no longer be SD. In actual practice, they get a hearing about once every three years. Because of this, the actual length of commitments on average is between 15 and 25 years[2] with almost all (close to 100%) of the releases being actively opposed by "the Director of the facility" (or his designee). While the actual length of treatment is therefore much lower than 50 plus years, this shorter length of treatment is due to death in prison and releases by the judicial system that are almost always opposed by "the Director of the facility." In regard to other state programs, the situation is almost identical or worse; in many states the official evaluation teams have never found a man to be no longer SD.

Indeed, it would be hard to imagine a Director of a facility or department that was appointed by an elected official who would ever recommend a "sexually dangerous" offender for release. If one such recommended for release offender went out and committed a new sexual offense, it would mean the abrupt end of the career of the politician under whose watch the Director recommended the offender for release.

Furthermore, under the Program, the facility Director would have to be willing to recommend the release of an "uncured" sexually dangerous offender. The following is a description by the Department of Correction of their own SOTP

> **Sex Offender Treatment Program**
> The Sex Offender Treatment Program is a comprehensive treatment program for all inmates identified as sex offenders including: those committed for a sex offense, those with any history of a sex offense conviction, and/or those individuals with sexual overtones in the reading of their official version. The major treatment components of the program include: modifying interpersonal relations; exploration of the roots of the problem; enhancing coping skills; building empathy; identifying cognitive distortions; modifying deviant arousal;

---

[1]   A "cure" rate of 1% per year means that in any given year there is a 1% chance that a randomly selected (average) individual will be cured. If one looks at a population of 100 individuals suffering from drug resistant tuberculosis, for example, such a cure rate means that one will be deemed cured in any given year. Of course, this is an average figure and in one year there may be no cures and in another there may be several. So some may be tuberculosis free in the first few years, while many others will die of old age with tuberculosis even if the tuberculosis doesn't kill them. On average at that rate of cure, it would take 100 years to cure the entire population of 100. The "time to cure" for the *average* offender would then be fifty years. And this is based on a cure rate of 1%. In actual practice, the official "cure rate" for SD across the nation appears to be *much lower* than 1%, which means the average time-to-cure could well be over 75 years based on the evaluations by those who are running these programs.

[2]   The actual average is unknown. This estimate is based on my personal experience of over thirty years working at or evaluating men at the Massachusetts Treatment Center. Rarely has a man been released after being committed for less than 10 years and most men are released before 30 years have passed. A larger number of men are never released and die at the Treatment Center than those released in less than 15 years. So, an average of between 15 and 25 years is fairly likely to be accurate.

2

developing a relapse prevention plan; transition to the community; and maintaining recovery. *This treatment program is based on the concept that sex offenders cannot be cured, but through a lifetime commitment to treatment and supervision, the chance of a relapse will be greatly reduced.* (Emphasis added. From http://www.state.ma.us/doc/PROGRAMS/deptsrvs.htm, the Department of Correction's web site. 2/22/04)

In today's political climate, is it really possible to imagine an elected official allowing one of his subordinates (the Director of the facility) to recommend release into the community of an "uncured" sex offender, regardless of the supervision available?[3]

---

[3] Since the Adam Walsh Act aims to place those deemed SD under the care of state-run programs, in almost all cases, the Director of the facility would be appointed by an elected official or his/her designee. It is just not reasonable to expect that, in today's political climate, the subordinates of elected officials would petition for the discharge of a man who had been deemed "Sexually Dangerous," even when there is no longer evidence that a person is SD. This explains why the official boards evaluating SD men rarely, if ever, (and in some states, never) recommend release.