UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| v. | ) |
| | ) Civil No: 07-12060-GAO |
| JOHN VOLUNGUS, | ) |
| | ) |
| Respondent. | ) |

## **RESPONDENT'S NOTICE OF SUPPLEMENTAL AUTHORITIES**

The Respondent, John Volungus is approaching the five-year anniversary of the government's petition to civilly commit him as a "sexually dangerous person."

In the intervening months since Mr. Volungus filed his Proposed Findings of Fact and Conclusions of Law, the Fourth Circuit and the United States District Court for the Eastern District of North Carolina have issued several decisions consistent with Mr. Volungus' argument that he is inappropriate for civil commitment. As noted previously, Mr. Volungus apparently is the only individual adjudicated to date under the Adam Walsh Act whose criminal history does not include proof of repeated instances of hands-on sexual offending. Of the cases adjudicated in North Carolina to date, only three individuals have been found to be sexually dangerous. Unlike Mr. Volungus, all have a history of hands-on sexual offending. In addition, all committed new violations when released to the community. *See United States v. Andrew Red Star*, 06-HC-2222-BR (E.D.N.C. Jan 3, 2012) (Order);[1] *United States v. Hobart Barrett*, 07-HC-

---

[1] The Order details that Red Star had been incarcerated since 1996 after pleading guilty to two counts of aggravated sexual assault. One count involved the rape of a 66 year-old disabled man whose home Red Star had entered through a locked door. The second involved the sexual assault of a woman whose home Red Star had entered later that day. In addition to these offenses, Red Star's prior history included a 1993 guilty plea to sexual assault and sexual intercourse without consent with a female under the age of 16. Furthermore, in 1995 Red Star committed a series of sexual offenses during a single day. His eight female victims varied in age from 12 to 49. Several of the victims were grabbed in their private areas. During his incarceration Red Star had an extensive history of misconduct including exposing himself, making sexual threats to female staff, sexual contact with other inmates, both consensual and

2097 (E.D.N.C., Dec. 1, 2010) (Judgment);[2] *United States v. Stanley Burkhardt*, 07-HC-2125-D-JG (E.D.N.C., Dec. 9, 2011) (Judgment).[3]

Conversely, in several cases the Respondents were found not to be sexually dangerous under 18 U.S.C. § 4248, despite criminal histories that included repeated hands-on offending. Thus, in *United States v. Hall*, No. 11-7102, ___ F.3d ___, 2012 WL 34481 (4th Cir. Jan. 9, 2012) the Fourth Circuit affirmed the district court's opinion which had found that Hall's time in the community without reoffense "to be a persuasive factor that Hall would not recidivate." *Id.* at *7, 9.[4] Hall's criminal offense history included a 1989 conviction for contact sex offenses with a ten year-old girl, a 1999 misdemeanor conviction for acting in a manner injurious to a child for showing two ten year-old girls drawings of unclothed females, a 2000 conviction for possession of child pornography, supervised release revocations in 2006 and 2007 for violating community correction center rules, inappropriate behavior with female clients, viewing pornography, and sexual relations with another program member, and a 2008 conviction for failure to register as a sex offender. *Id.* at *1-3. *See also United States v. Horn*, 07-HC-2177-

---

nonconsensual, and possessing sexually explicit photographs.

[2] Docket Entry # (hereinafter, "D.E.") 100. The district court has not issued Findings of Fact and Conclusions of Law in this matter. However, the Government's Proposed Findings of Fact and Conclusions of Law [D.E.95] detail Barrett's extensive criminal record. His sexual offense history includes a 1967 conviction for Assault with Intent to Rape, a 1989 conviction for Unlawful Imprisonment of his 13 year old niece, a 1990 conviction for kidnaping a five year-old girl, transporting her 270 miles, molesting her and abandoning her under a highway underpass, and a 2003 supervised release violation in which the sentencing court also considered recent allegations that Barrett had attempted to molest a 9 year-old girl and 6 year-old girl. *See* D.E. 95 at 5-11.

[3] D.E. 87. The district court has not issued Findings of Fact and Conclusions of Law in this matter. However, the Government's Proposed Findings of Fact and Conclusions of Law [D.E. 79] detail Burkhardt's sexual offense history, which includes a 1987 conviction for child pornography, a 1992 conviction for a hands on sex offense which occurred prior to Burkhardt's 1987 child pornography conviction, a 1999 conviction for child pornography, and a subsequent violation of supervised release.

[4] Mr. Volungus previously cited the district court opinion in this matter in Respondent's Proposed Findings of Fact and Conclusions of Law at p.3 n.1.

BR (E.D.N.C., Dec. 8, 2011) (Order)[5] (the district court found that the government failed to prove both that Horn suffered from a serious mental illness, abnormality, or disorder, and that he would have serious difficulty refraining from sexually violent conduct if released. Horn's history included a 1991 rape of his first wife with whom he was separated, a 1992 rape of his girlfriend who had recently terminated their relationship, and a 1996 kidnaping and rape of his second wife who had recently filed for divorce); *United States v. Wooden*, 10-HC-2151-BO (August 30, 2011) (Order)[6] (The district court found that the government failed to prove that Wooden currently suffers from a serious mental illness, abnormality or disorder that would cause him serious difficulty refraining from sexually violent conduct if released. Wooden's criminal history included a 1975 plea to taking indecent liberties with a minor for which he served seven years, a 1984 plea to sodomy, enticing a minor, and attempting to entice another minor, for which he served eighteen years prior to parole, a 2001 parole revocation for failure to cooperate with supervision, and a 2005 parole revocation). *See also United States v. Comstock*, 06-HC-2195 (E.D.N.C. Nov. 30, 2011) (Judgment).[7]

In addition to these cases, the United States District Court for the Eastern District of North Carolina recently decided *United States v. Revland*, 2011 WL 6749814 (E.D.N.C. Dec. 23,

---

[5] D.E. 121.

[6] D.E. 68.

[7] D.144. The district court has not yet issued an Order setting forth its reasons for denying the petition for commitment. The Government's Proposed Findings of Fact and Conclusions of Law [D.E.137] and Respondent's Proposed Findings of Fact and Conclusions of Law [D.E. 138] detail Comstock's sexual offense history. In 2000 Comstock pled guilty to two counts of aggravated indecent liberties with a child in Kansas and was sentenced to 55 months and 36 months of supervised release. He also pled guilty in federal court to two counts of receipt of child pornography and was sentenced to 37 months to be served consecutively with his state sentence. The number of Comstock's victims appears to be disputed: While incarcerated in Kansas he reported approximately 100 child victims during sex offender treatment. Similarly, during an evaluation in federal custody he listed 78 child victims. However, he has since stated that he was coerced to give an inaccurate number and stated that he has only seven victims.

2011). This case is particularly relevant, as it addresses the relevance of "admissions" of sexual contact which the respondent subsequently disavowed. The government has argued that Mr. Volungus' statements about sexual contact with minors in his internet chats with Indygirl accurately relate child molestation offenses he committed and constitute "admissions" that he has engaged in prior sexual offenses against children. Thus, the government argues, Mr. Volungus' statement that his criminal history consists of only one prior offense of attempted child molestation, and no hands-on offenses is inaccurate. *See* Government's Proposed Findings of Fact and Conclusions of Law [D.E. 74] at ¶ 164. Mr. Volungus has consistently maintained from the time of his 1998 arrest that his representations to "Indygirl" were untrue. He argued that this Court should not credit these representations in its assessment of any of the three elements of the case. In *Revland*, the district court addressed a similar issue - how to assess the relevance of a prior, unprosecuted allegation of sexual assault against Revland, as well as Revland's prior admissions made during the Bureau of Prisons Sex Offender Treatment Program which Revland has since disavowed. In each case, the district court held that the government had failed to prove, by clear and convincing evidence, that the events occurred. *Id*. at *3, *5. The court declined to credit these events in its assessment of whether Revland suffered from a serious mental illness, abnormality, or disorder or in its assessment of whether Revland would have serious difficulty refraining from child molestation.

  *Revland* is also informative on the issue of what weight to give actuarial instruments that purport to predict recidivism rates based on historical data of sex offenders who have been tracked in the past. The government's expert, Dr. Phenix, relied heavily these instruments to support her conclusion that Mr. Volungus was a "sexually dangerous person." She repeatedly stressed that Mr. Volungus scored in the "high" risk range on the Static-99R during her

testimony. Mr. Volungus argued both that her scoring and interpretation of the instruments were incorrect, and that actuarial instruments themselves are of limited value. *See* Respondent's Proposed Findings of Fact and Conclusions of Law [D.E. 77] at ¶ 142. *Revland* supports this assessment. The court noted that the petitioner's experts had testified that actuarial instruments had low predictive value and that even the government's expert conceded they were only "moderate predictors of sexual reoffense." *Id*. at *6. "The use of actuarial instruments under these conditions can be likened to a cardiologist applying a life insurance actuarial table to make a diagnosis of cardiac disease." *Id*. at *6 (citing Pet. Exh. 14). Ultimately, *Revland* "reject[ed] the use of these 'instruments' as a means of assessing the degree to which, if at all, that respondent will have serious difficulty in refraining if released." *Id*. at *6.

      Mr. Volungus respectfully requests that this Honorable Court find that he is not a "sexually dangerous person" as defined in the Adam Walsh Act, and order him released.

                        Respectfully submitted,

                        JOHN VOLUNGUS
                        by his attorneys,

                        /s/ William W. Fick
                        William W. Fick (BBO# 650562)
                        Ian Gold (BBO# 665948)
                        FEDERAL PUBLIC DEFENDER OFFICE
                        51 Sleeper Street, 5th Floor
                        Boston, Massachusetts 02210
                        (617) 223-8061 (phone)
                        (617) 223-8080 (fax)

Date: January 23, 2011

## **CERTIFICATE OF SERVICE**

      I hereby certify that this document(s) filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on this date.

                                            /s/ William W. Fick